UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| EBENEZER OLANIYI SAMUEL, | Case No. 25-cv-2140 (LMP/JFD) |
| Petitioner, | |
| v. | |
| PAM BONDI, KRISTI NOEM, JOSEPH EDLOW, CINDY MUNITA, and JOSHUA MARX, in their official capacities,[1] | ORDER DENYING RESPONDENTS' MOTION TO DISMISS |
| Respondents. | |

Ebenezer Olaniyi Samuel, Pro Se Petitioner.

Trevor Brown, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Ebenezer Olaniyi Samuel ("Samuel") seeks judicial review of his naturalization application, which the United States Citizenship and Immigration Services ("USCIS") denied in November 2024. *See* ECF No. 1. Respondents Pam Bondi, Kristi Noem, Joseph Edlow, Cindy Munita, and Joshua Marx (the "Government") move to dismiss Samuel's petition for lack of subject-matter jurisdiction and for failure to state a claim. ECF No. 9. For the following reasons, the motion is denied.

---

[1] Joseph Edlow is substituted for Kika Scott, Cindy Munita is substituted for Mick Dedvukaj, and Joshua Marx is substituted for Steven G. Rice, pursuant to Fed. R. Civ. P. 25(d).

1

## BACKGROUND

Samuel is a Nigerian national who was admitted to the United States in October 2016, after he was issued a B1 non-immigrant visa in Nigeria. ECF No. 1-1 at 1. Shortly after arriving in the United States, Samuel met a United States citizen named Daphene Abraham ("Abraham"), and the two of them started a romantic relationship. ECF No. 1 at 3–5. Samuel married Abraham in May 2017. ECF No. 1-1 at 1. Abraham then applied with USCIS for Samuel and his children to become lawful permanent residents in the United States. *Id.* Samuel was granted lawful permanent residency by USCIS on July 26, 2019. *Id.* at 2.

On July 1, 2024, Samuel applied for naturalization with USCIS. *Id.* at 4. Based on an investigation USCIS had conducted from 2019 to 2020, and based on Samuel's responses during his naturalization interview, USCIS denied Samuel's naturalization application on November 25, 2024. *See id.* at 1–4. USCIS concluded that Samuel "entered into a sham marriage with [Abraham] with the sole intention of obtaining an immigration benefit in the United States." *Id.* at 12. Because Samuel's marriage to Abraham was not bona fide, USCIS concluded that Samuel was not eligible to become a lawful permanent resident and therefore was not lawfully admitted to the United States for permanent residence, as is required for naturalization. *Id.* Samuel sought reconsideration from USCIS, which USCIS denied on April 21, 2025. *Id.* at 1.

On May 16, 2025, Samuel brought the instant petition pursuant to 8 U.S.C. § 1421(c), which provides for de novo judicial review of a denied naturalization application. *See* ECF No. 1. Samuel disputes USCIS's conclusion that his marriage to

Abraham was a sham and asks this Court to grant his naturalization application. *See generally id.*

On June 24, 2025, the Department of Homeland Security ("DHS") initiated removal proceedings against Samuel by serving him a Notice to Appear that charged him with being removable on the basis of his sham marriage to Abraham. ECF No. 11-1. Samuel's removal proceedings remain pending. ECF No. 11 ¶ 4.

A month later, the Government moved to dismiss Samuel's petition. ECF No. 9. The Government largely argues that the commencement of removal proceedings against Samuel renders adjudication of the petition moot. ECF No. 10 at 6–9. Two weeks after the deadline to oppose the Government's motion, Samuel filed an opposition brief to the Government's motion. ECF No. 24.

## ANALYSIS

The Government seeks dismissal under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 10 at 5–6. A defendant may raise either a "facial" or a "factual" challenge to a court's subject-matter jurisdiction under Rule 12(b)(1). *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861 (D. Minn. 2021). On a facial challenge, "the court restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). By contrast, "[i]n a factual attack, the court considers matters outside the pleadings." *Id.* In the latter case, the party asserting federal jurisdiction must establish the existence of subject-matter jurisdiction by a preponderance of the evidence, *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.

3

2018), and the petitioner's factual allegations are not entitled to any presumption of truth, *Osborn*, 918 F.2d at 729 n.6. Because the Government here offers evidence outside of the pleadings in challenging the Court's subject-matter jurisdiction, *see* ECF No. 11, the Court construes the Government's motion to raise a factual attack to the Court's subject-matter jurisdiction.

As for a Rule 12(b)(6) motion for failure to state a claim, the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the petitioner's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). In considering a Rule 12(b)(6) motion, the Court is limited to reviewing the complaint and documents "necessarily embraced by the complaint." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Because Samuel is proceeding pro se, the Court is mindful to liberally construe his filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

As an initial matter, the Court observes that Samuel did not timely file a brief opposing the Government's bases for dismissal. Rather, Samuel filed his opposition brief two weeks after the deadline for filing an opposition and after the Government's motion had been taken under advisement. ECF Nos. 22, 24. Samuel, who the Court recognizes is representing himself, is advised that failing to timely respond to the Government's motions by addressing the arguments contained in those motions may result in those motions being summarily granted. *See Hernandez-Diaz v. Equifax Info. Servs.*, No. 22-cv-2302

(JRT/JFD), 2023 WL 2025123, at *2 (D. Minn. Feb. 15, 2023) ("[T]he Court interprets a failure to respond to a motion to dismiss as a waiver and voluntary dismissal of those claims."). But because Samuel has made efforts to continue litigating this case, ECF No. 24, the Court elects to consider the Government's motion on the merits. However, the Court will not consider the arguments made in Samuel's untimely opposition brief. In the future, Samuel is directed to follow the briefing deadlines in Local Rule 7.1.[2]

## I.     Whether Samuel's Removal Proceedings Render His Petition Moot

The Government first argues that the initiation of removal proceedings against Samuel renders his petition moot. ECF No. 10 at 6–9. The Government observes that the Attorney General has the "sole authority to naturalize persons as citizens of the United States," 8 U.S.C. § 1421(a), but that authority is cabined "if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest," *id.* § 1429. In that case "no application for naturalization shall be considered by the Attorney General." *Id.* The Government then points to the Eighth Circuit's holding that "the pendency of removal proceedings, whether initiated before or after the filing of a § 1421(c) petition, prevents a district court from directing the Attorney General to naturalize [a noncitizen] due to the limits imposed on the Attorney General's authority to consider applications for naturalization by § 1429," and therefore renders the petition moot. *See Akpovi v. Douglas*, 43 F.4th 832, 837 (8th Cir. 2022). The Government sees this case as a slam dunk: because the pending removal proceedings against Samuel were initiated "after the filing of a

---

[2]     This District's Local Rules are available at https://www.mnd.uscourts.gov/sites/mnd/files/Local-Rules-Master.pdf [https://perma.cc/6T3K-YMY4].

§ 1421(c) petition," *Akpovi* requires this Court to dismiss the petition as moot. ECF No. 10 at 7.

Not so fast. The Government glosses over a major problem in their case: whether removal proceedings are pending against Samuel "pursuant to a warrant of arrest." 8 U.S.C. § 1429. After all, Section 1429 only restricts the Attorney General's authority to consider an application for naturalization if the removal proceedings are pending "pursuant to a warrant of arrest." *Id.* Here, it is undisputed that removal proceedings were initiated against Samuel only through issuance of a Notice to Appear. ECF No. 11 ¶¶ 3–4. So, the question is whether a Notice to Appear is the same thing as a "warrant of arrest."

The Eighth Circuit did not need to decide that question in *Akpovi*, as it was undisputed in that case "that removal proceedings were pending against [the petitioner] pursuant to a 'warrant of arrest.'" 43 F.4th at 835 n.3. But courts addressing that thorny question head-on, both within this Circuit and in other circuits, have come to different conclusions.

For its part, the Seventh Circuit holds that a Notice to Appear is a "warrant of arrest" under Section 1429 because DHS's own regulation provides that for purposes of Section 1429, "a 'notice to appear' in a removal proceeding should be treated as a 'warrant of arrest.'" *See Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012) (quoting 8 C.F.R. § 318.1). The Seventh Circuit explained in *Klene* that "[a]n agency can't rewrite statutory terms, but it can define its own vocabulary," and because "'arrest' does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a 'notice to appear' and a 'warrant of

6

arrest' at the same time." *Id.* Although the Seventh Circuit stated that "all other courts of appeals agree" on that holding, the Seventh Circuit did not actually cite any other authority supporting its holding. *Id.*

Six years later, the Ninth Circuit explicitly rejected the Seventh Circuit's holding that a "Notice to Appear" and a "warrant of arrest" are the same thing for purposes of Section 1429. *See Yith v. Nielsen*, 881 F.3d 1155, 1165–68 (9th Cir. 2018). The Ninth Circuit concluded that DHS's regulation equating a Notice to Appear with a "warrant of arrest" was unreasonable given the plain language of Section 1429. *See id.* The Ninth Circuit specifically looked to the dictionary definition of "warrant of arrest," how that term is used in related portions of the Immigration and Nationality Act, and how that term is used in DHS's own regulations. *Id.* Accordingly, the Ninth Circuit held that Section 1429 does not prohibit a court from considering a Section 1421(c) petition if the petitioner's removal proceedings are pending based only on a Notice to Appear. *Id.* at 1168.

Although the Eighth Circuit has not explicitly weighed in on this split in authority, *see Akpovi*, 43 F.4th at 835 n.3, it appears that a slight majority of district courts in this Circuit have sided with the Ninth Circuit. *See Sanga v. Barr*, 706 F. Supp. 3d 803, 812–15 (S.D. Iowa 2020); *Adegbesote v. Tritten*, No. 20-cv-1940 (JRT/TNL), 2021 WL 5995198, at *4–6 (D. Minn. June 2, 2021); *but see Gardener v. Barr*, No. 4:18 CV 620 (JMB), 2019 WL 1001340, at *6–7 (E.D. Mo. Mar. 1, 2019) (rejecting the Ninth Circuit's approach and adopting the Seventh Circuit's approach).

This Court joins those courts that found the Ninth Circuit's conclusion more persuasive, including the only other court in this District to consider the question. The

Court will not parrot the thorough analyses of *Yith*, *Sanga*, and *Adegbesote* here, but simply recounts the reasons why it agrees that DHS's regulation equating a Notice to Appear and a "warrant of arrest" is unreasonable.

*First*, the plain and ordinary meaning of the term "warrant of arrest" in Section 1429 means a "warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody." *Yith*, 881 F.3d at 1166 (quoting *Arrest Warrant*, Black's Law Dictionary (10th ed. 2014)). But a Notice to Appear is neither issued by a "disinterested magistrate" nor directs the custodial arrest of a noncitizen. Rather, it is "akin to a summons that provides [a noncitizen] with specified information regarding removal proceedings; it does not direct law enforcement to arrest and detain the [noncitizen]." *Id.* at 1167 (citing 8 U.S.C. § 1229(a)).

*Second*, other regulations promulgated by DHS distinguish between a "Notice to Appear" and a "warrant of arrest." *See, e.g.*, 8 C.F.R. § 236.2(a) ("[T]he notice to appear, *and the warrant of arrest*, if issued, shall be served in the manner prescribed . . . ." (emphasis added)); *id.* § 236.1(b) ("At the time of issuance of the notice to appear . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); *see also Yith*, 881 F.3d at 1167 n.6 (noting that "DHS's Form I-200, entitled 'Warrant of Arrest, United States Department of Homeland Security,' is distinct from Form I-862, entitled 'Notice to Appear, United States Department of Homeland Security' . . . showing that the forms are not equivalent"). The Court presumes that the difference in language between a "Notice to Appear" and a "warrant of arrest" as drawn by

8

DHS "convey differences in meaning." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018) (citation omitted).

*Third*, removal proceedings are always initiated by service of a Notice to Appear. *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 1239.1(a). But Section 1429 provides that the Attorney General may not consider a naturalization application "if there is pending against the applicant a removal proceeding *pursuant to a warrant of arrest*." 8 U.S.C. § 1429 (emphasis added). If "warrant of arrest" meant the same thing as a "Notice to Appear," there would be no need to include the italicized portion, since every removal proceeding is accompanied by a Notice to Appear. Interpreting "warrant to arrest" to include a Notice to Appear would render the italicized portion superfluous, which is an interpretative result this Court must avoid. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). This conclusion harmonizes with the specific arrest provisions of 8 U.S.C. § 1226(a), which states that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." Clearly, then, federal law distinguishes between a Notice to Appear and a warrant of arrest.

It also bears noting that *Yith*, *Klene*, *Sanga*, *Adegbesote*, and *Gardener* were all decided under the *Chevron* doctrine, which afforded deference to an agency's interpretation of a federal statute. *See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). But the *Chevron* doctrine is no more; now, federal courts must "exercise independent judgment in construing statutes administered by agencies." *Loper*

9

*Bright Enters. v. Raimondo*, 603 U.S. 369, 406 (2024).  As described above, DHS's regulation equating a Notice to Appear and a "warrant of arrest" is unmoored from the plain language of Section 1429 and contradicts how both federal statutes and regulations distinguish between those terms.  The "best reading" of that statutory and regulatory scheme cannot be squared with 8 C.F.R. § 318.1.  *Id.* at 400.

*Klene* and *Gardener* do not convince the Court otherwise.  *Klene* employed none of the ordinary tools of statutory interpretation to reach its holding, and its conclusion that "there's no logical problem with an agency calling its official process a 'notice to appear' and a 'warrant of arrest' at the same time" is not supported by its scant analysis.  697 F.3d at 670.  And *Klene*'s bold statement that "all other courts of appeals agree" with its conclusion is accompanied by no citations to authority—perhaps because the other cases relied upon in *Klene* did not actually address whether a Notice to Appear constitutes a "warrant of arrest" under Section 1429.  *See Sanga*, 706 F. Supp. 3d at 814 n.10.

*Gardener*, too, is unpersuasive.  Like *Klene*, *Gardener* employed none of the ordinary tools of statutory interpretation to reach its result.  *Gardener*, 2019 WL 1001340, at *6–7.  Rather, *Gardener* concluded that the Ninth Circuit's approach is "unworkable" because it "basically rests on a finding that 'warrant of arrest' has a fixed meaning such that any other agency interpretation would, in effect, be inconsistent with the plain language of the statute." *Id.* at *6.  But the whole point of statutory interpretation is to determine whether an agency interpretation is consistent with the plain language of a statute.  *See Missouri v. Trump*, 128 F.4th 979, 991 (8th Cir. 2025).  That endeavor is not

unworkable; rather, it is a federal court's duty to determine a statute's "best meaning" by "deploying its full interpretive toolkit." *Loper Bright*, 603 U.S. at 408–09.

*Gardener* also asserted that the Ninth Circuit's approach would "undermine the very system Congress intended in which removal proceedings take priority over naturalization proceedings." 2019 WL 1001340, at *7. But the "best evidence" of congressional intent is the "statutory text." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) (citation omitted) (explaining that "the text of a law controls over purported legislative intentions unmoored from any statutory text" and that a court may not "replace the actual text with speculation as to Congress' intent"). Here, the statutory and regulatory text leads squarely to the Ninth Circuit's conclusion. More to the point, the policy concerns raised by *Gardener* over the Ninth Circuit's approach "cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 596 U.S. 328, 346 (2022).

In sum, Section 1429 moots a pending Section 1421(c) petition only if there are pending removal proceedings "pursuant to a warrant of arrest," not merely pursuant to a Notice to Appear. 8 U.S.C. § 1429. Because it is undisputed that Samuel's removal proceedings are pending only pursuant to a Notice to Appear, Section 1429 does not moot his Section 1421(c) petition. The Government's motion to dismiss for lack of subject-matter jurisdiction is therefore denied.

## II. Whether the Petition Plausibly States a Claim

The Government's argument for dismissal under Rule 12(b)(6) is largely derivative of its argument for dismissal under Rule 12(b)(1). *See* ECF No. 10 at 9 (explaining that

11

the petition fails to state a claim "[f]or substantially the same reasons" as the Court lacks subject-matter jurisdiction). Specifically, the Government argues that to the extent Samuel seeks a declaratory judgment regarding his entitlement to naturalization, that request for relief fails as a matter of law because Section 1429 bars the Attorney General from naturalizing Samuel. *See id.* at 10. At this point, the Court has held that Section 1429 does *not* bar the Attorney General from naturalizing Samuel because his removal proceedings are not pending pursuant to a "warrant of arrest." Accordingly, the Government's Rule 12(b)(6) motion is also denied.

One final housekeeping matter: in lieu of timely responding to the Government's motion to dismiss, Samuel moved to stay these proceedings until a declaratory-judgment action he filed in Illinois state court regarding the validity of his marriage was resolved. ECF No. 16. While the motion was under advisement, however, Samuel filed a "motion to continue proceedings," explaining that the Illinois state-court action had been dismissed and that he no longer sought a stay of these proceedings. ECF No. 23. The Court therefore denies both the stay motion and the "motion to continue proceedings" as moot, which has the effect of continuing these proceedings.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

   1. The Government's Motion to Dismiss (ECF No. 9) is **DENIED**.

   2. Samuel's Motion to Stay Proceedings (ECF No. 16) is **DENIED** as moot.

3. Samuel's Motion to Continue Proceedings (ECF No. 23) is **DENIED** as moot.

Dated: October 21, 2025

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge